UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RUMONDA DASHON NEASMAN,

     Plaintiff,

v.                              Case No:     8:15-cv-437-T-DNF

CAROLYN COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## OPINION AND ORDER

Plaintiff, Rumonda Dashon Neasman, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number) and the parties filed legal memoranda in support of their positions. After review of the record and the parties' filings, the Court finds that the decision of the Commissioner is due to be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).

### I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

#### A.  Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B.  Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion.  Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence."  *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case.  42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must prove that she is not undertaking substantial gainful employment.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *see* 20 C.F.R. §

404.1520(a)(4)(i).  If a claimant is engaging in any substantial gainful activity, she will be found not disabled.  20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments.  *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(ii).  If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled.  20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1.  *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii).  If she meets this burden, she will be considered disabled without consideration of age, education and work experience.  *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work.  *Id*.  At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work.  20 C.F.R. §§ 1520(a)(4)(iv), 1520(f).  If the claimant can still perform her past relevant work, then she will not be found disabled.  *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience.  *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v).  If the claimant is capable of performing other work, she will be found not disabled.  *Id*.  In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant.  *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d at 1278 n.2.

### C. Procedural History

Plaintiff filed an application for SSI on April 15, 2011, alleging disability beginning December 1, 2003. (Tr. 97, 146). Plaintiff's application was denied initially on June 22, 2011, and upon reconsideration on August 19, 2011. (Tr. 100-05, 113-17). Plaintiff requested a hearing and, on March 20, 2013, a hearing was held before Administrative Law Judge Joseph L. Brinkley (the "ALJ"). (Tr. 38-88). On June 7, 2013, the ALJ entered a decision finding that Plaintiff is not disabled. (Tr. 20-37). Plaintiff requested review of the ALJ's decision and the Appeals Council denied review on January 13, 2015. (Tr. 1-7). Plaintiff initiated this action by filing a Complaint (Doc. 1) on March 2, 2015.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 15, 2011, the application date. (Tr. 22). At step two, the ALJ found that Plaintiff has the following severe impairments: lumbar spine scoliosis with back pain; shoulder pain; callouses on both feet with pain; leg pain; asthma; depressive disorder; anxiety disorder; and a history of polysubstance abuse. (Tr. 22). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 23).

Before proceeding to step 4, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to

> lift/carry 20 pounds occasionally and 10 pounds frequently. She can sit and stand up to a total of six hours each with regularly scheduled breaks, but she must have the ability to alternate sitting and standing, as she can only sit or stand up to 30 minutes at a time without interruption but then will need to change positions for up to 15 minutes before resuming sitting or standing. She is limited to occasional overhead reaching with both arms. She is limited to occasional balancing, kneeling, stooping, and climbing of ramps and stairs. She can never crawl, crouch, or climb ladders, ropes, and scaffolds. She must avoid concentrated exposure to fumes, dusts, odors, poor vent, wetness, vibrations, and extreme cold and heat. She must avoid concentrated exposure to work place hazards such as unprotected heights and dangerous machinery. She is limited to unskilled, simple, routine, repetitive tasks. She can have only superficial in person contact with the general public, meaning she can have no ongoing interaction with it but can have occasional indirect communication with it. She can only have occasional contact with supervisors and cannot work in tandem or as part of a team. Finally, the work cannot be on an assembly line or require strict production quotas.

(Tr. 24). At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. 19).

At step five, the ALJ relied upon the testimony of a VE to find that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform given her age, education, work experience, and RFC. (Tr. 19). Specifically, the ALJ found that Plaintiff could perform such jobs as toll collector, office helper, and office mail clerk. (Tr. 31). The ALJ concluded that Plaintiff was not under a disability since the date the application was filed, April 15, 2011. (Tr. 32).

## II.     Analysis

Plaintiff raises two issues on appeal: (1) whether the ALJ erred by failing to adopt the limitations opined by Dr. Van Ingen despite according "great weight" to the opinion; and (2)

whether the ALJ erred by rejecting the opinion of Dr. Kasper.  The Court will address each issue in turn.

      **a.   Whether the ALJ erred by failing to adopt the limitations opined by Dr. Van Ingen despite according "great weight" to the opinion.**

Plaintiff argues that although the ALJ summarized parts of Dr. Van Ingen's opinion and stated that he was assigning it "great weight," the ALJ failed to adopt the full extent of limitations opined by Dr. Van Ingen.  (Doc. 19 p. 12).  Plaintiff contends that Dr. Van Ingen's opinion was not consistent with the ALJ's RFC assessment, but was far more restrictive because it spoke to Plaintiff's inability to perform basic requirements of even unskilled work.  (Doc. 19 p. 15).  In response, Defendant argues that Dr. Van Ingen's opinion is consistent with the ALJ's RFC finding.  (Doc. 20 p. 5).

The record shows that, at the request of the state disability agency, Daniel Van Ingen, Psy.D., performed a psychological evaluation of the Plaintiff on June 2, 2011.  (Tr. 865-70).  Dr. Van Ingen noted that Plaintiff reported difficulty standing to work due to back difficulties from a car accident as well as outpatient treatment for mental issues.  (Tr. 865).  She experienced depressed moods, crying spells, irritability, feelings of worthlessness, hopelessness, anxiety, panic attacks, auditory hallucinations, paranoid thoughts, and difficulty sleeping.  (Tr. 866).  Her mood was depressed and anxious.  (Tr. 867).  Attention and concentration was impaired and she had difficulty with simple calculations.  (Tr. 867).  Her recent and remote memory skills were limited.  (Tr. 867).  Estimated intellectual functioning was in the borderline to low average range and her judgment was poor to fair.  (Tr. 867).  Dr. Van Ingen opined that

> [v]ocationally, the claimant appears to be capable of understanding and following simple instructions and directions.  She appears to be capable of performing simple tasks independently.  She appears to have difficulty maintaining attention and concentration for tasks.  She may need supervision attending to routine and maintaining a schedule successfully.

> Anxiety may prevent her from learning new tasks. She appears to have a poor-to-fair capability for making appropriate decisions. She appears to have a fair capability of relating to and interacting appropriately with others, but may have difficulty due depression and anxiety. She appears to have difficulty dealing with daily routine stressors.

(Tr. 868). Plaintiff was diagnosed with major depression with psychotic features, dysthymic disorder, generalized anxiety disorder, cocaine and cannabis abuse in sustained remission, and was assigned a GAF of 52. (Tr. 869). Her prognosis was guarded due to psychological comorbidity and she would need supervision managing funds due to substance abuse concerns. (Tr. 869).

In this opinion, the ALJ summarized Dr. Van Ingen's opinion and found that it was consistent with the ALJ's RFC assessment. (Tr. 28). For this reason, the ALJ explained, he accorded Dr. Van Ingen's opinion "great weight." (Tr. 28).

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

Here, the Court finds no error in the ALJ's treatment of Dr. Van Ingen's opinion. While Dr. Van Ingen noted that Plaintiff has "difficulty" maintaining concentration for tasks, "difficulty" dealing with daily routine stressors, and "may have difficulty" relating to and interacting appropriately with others due to depression and learning new tasks due to her anxiety, Dr. Van

Ingen nevertheless opined that "[v]ocationally, [Plaintiff] appears to be capable of understanding and following simple instructions and directions" and "appears to be capable of performing simple tasks independently." (Tr. 868). Dr. Van Ingen's assessment of Plaintiff's vocational capabilities is consistent with the ALJ's RFC assessment that Plaintiff is "limited to unskilled, simple, routine, repetitive tasks." (Tr. 24). Further, Dr. Van Ingen's opinion is consistent with the ALJ's assessment that Plaintiff "can have only superficial in person contact with the general public" and "only occasional contact with supervisors and cannot work in tandem or as part of a team." (Tr. 24). Accordingly, the Court finds that the ALJ did not commit reversible error by according "great weight" to Dr. Van Ingen's opinion.

### b.  Whether the ALJ erred by rejecting the opinion of Dr. Kasper.

Plaintiff argues that the ALJ's decision to accord "very little weight" to the opinion of Dr. Kasper is not supported by substantial evidence. (Doc. 19 p. 19). Plaintiff contends that contrary to the ALJ's finding that Dr. Kasper's opinion was inconsistent with the record and was based on Plaintiff's self-reports, Dr. Kasper's opinion is consistent with the medical record and objective findings support Dr. Kasper's opinion. (Doc. 19 p. 19-20). In response, Defendant argues that the ALJ sufficiently explained his decision to accord "very little weight" to Dr. Kasper's opinion. (Doc. 20 p. 8).

The record shows that Mary Elizabeth Kasper, Ph.D., completed a psychological evaluation of Plaintiff on September 14, 2011. (Tr. 933-42). Dr. Kasper diagnosed Plaintiff with "schizophrenia, paranoid-type with superimposed major depressive disorder versus schizoaffective disorder, unspecified type" and "history of substance abuse disorder, sustained remission x 3 yrs. by patient report." (Tr. 940). Dr. Kasper found that Plaintiff was "severely impaired from a psychiatric standpoint" at the time of her evaluation. (Tr. 941). Dr. Kasper noted

that Plaintiff was unable to maintain an emotionally stable manner during the evaluation and that she was actively hallucinating and experiencing psychotic symptoms during the evaluation.  (Tr. 941).  Dr. Kasper's impression was that Plaintiff was so impaired as to be unable to benefit from a vocational rehabilitation program and recommended that Plaintiff be referred to the Office of Disability Determinations "to aggressively pursue Social Security Disability benefits."  (Tr. 941).

In his decision, the ALJ summarized Dr. Kasper's psychological evaluation and stated that he gave the opinion "very little weight."  (Tr. 28).  The ALJ explained that Dr. Kasper's opinion "seems to be based on the claimant's own self-reports during the examination and is not consistent with her prior medical records, most notably her examination just a week earlier showing a normal mental status."  (Tr. 28).

Here, the Court finds that the ALJ did not err in according "very little weight" to Dr. Kasper's opinion.  As a one-time examiner, Dr. Kasper's opinion was not entitled to any particular deference.  *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004).  The ALJ explained that he reached his decision because Dr. Kasper's opinion appeared to be based on Plaintiff's self-reports during the examination and because it was not consistent with the record. These reasons provided good cause for the ALJ to reject Dr. Kasper's opinion.  *See Phillips*, 357 F.2d at 1241 (ALJ can discount opinions where they are not bolstered by the evidence or the evidence supports a contrary finding); *Crawford*, 363 F.3d at 1159 (ALJ properly rejected the opinion of a treating physician based primarily on subjective complaints).

The record shows that Plaintiff's examination immediately prior to Dr. Kasper's psychological evaluation revealed a normal mental status findings.  (Tr. 906-08, 980-81).  Plaintiff takes issue with the ALJ's reliance on these records, contending that they were cursorily filled-out forms completed by nurse practitioners and nurse practitioner students that did not truly record

Plaintiff's mental status.  As Defendant notes, however, Plaintiff offers no evidence to support this claim.  In any event, the record also shows that Plaintiff's other mental status examinations and records reveal findings that were not indicative of the severe findings Dr. Kasper assessed.  These records show Plaintiff had normal mental status findings, global assessment of function (GAF) scores in the moderate to mild symptom or limitations range, and notations that Plaintiff was stable.  (Tr. 723, 731-33, 749, 874, 906-07, 947, 951, 953, 957-58, 960, 966, 975, 979-80).  These records further support the ALJ's decision to discount Dr. Kasper's opinion.

The ALJ's decision to accord Dr. Kasper's opinion is supported by more than a scintilla of evidence and a reasonable person would accept his conclusion as adequate.  Accordingly, the Court finds that the ALJ did not err in his consideration of Dr. Kasper's opinion.

### III.    Conclusion

The decision of the Commissioner is **AFFIRMED**.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 16, 2016.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties